**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

ELVIS HENRY,

                Petitioner,      :      Case No. 2:19-cv-2309

   - vs -                             District Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                              :
             Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254 by Petitioner Elvis Henry with the assistance of counsel. The case is ripe for decision upon the Petition (ECF No. 1), Petitioner's Brief in Support of the Petition (ECF No. 6), the State Court Record and Trial Transcripts (ECF Nos. 9-10), Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 14).

On October 30, 2019, the Magistrate Judge reference in the case was transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 16) and Petitioner's Motion to Withdraw his First Ground for Relief was granted (ECF No. 17).

**Litigation History**

Henry was indicted by the Jefferson County grand jury on October 7, 2015, on one count of possession of cocaine with a major drug offender specification and one count of having weapons while under a disability. Having pleaded not guilty and after being unsuccessful on a motion to

1

suppress the seized evidence, Henry tried the case to a jury and convicted on both counts. He was then sentenced to a mandatory eleven-year term for cocaine possession and a mandatory three-year consecutive term on the weapons charge.

On direct appeal, the Seventh District court of Appeals affirmed. *State v. Henry*, 7th Dist. Jefferson No. 16 JE 0010, 2017-Ohio-7505 (Aug. 31, 2017). The Supreme Court of Ohio granted his motion for delayed appeal, but then declined to accept jurisdiction. *State v. Henry,* 2018-Ohio-2155.

On May 1, 2017, Henry filed *pro se* a petition for post-conviction relief under Ohio Revised Code § 2953.21. The Common Pleas Court denied the petition and Henry appealed *pro se*. The Seventh District then affirmed the dismissal. *State v. Henry*, 7th Dist. Jefferson No. 17 JE 0018, 2018-Ohio-787 (Feb. 3, 2018), appellate jurisdiction declined, 2018-Ohio-2380.

Henry next filed a motion for leave to file a delayed motion for new trial. The Common Pleas Court denied the motion. Henry appealed and the appeal remained pending when the Return of Writ was filed on August 29, 2019, although the Seventh District affirmed the trial court's denial of the motion for new trial. *State v. Henry*, 7th Dist. Jefferson No. 18 JE 0019, 2019-Ohio-3645 (Sept. 6, 2019)

With the assistance of counsel Henry filed his Petition in this Court on May 30, 2019, pleading the following four grounds for relief:

> **Ground One**: The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law, and entered a decision that was unreasonable in light of the trial record, by failing to rule that insufficient evidence supported the jury finding beyond a reasonable doubt that Henry possessed 100 or more grams of cocaine found in a safe located in an upper floor of the home owned and occupied by Angela Gilliam.
>
> **Supporting Facts**: On July 28, 2015, law enforcement officers executed a search warrant on Gilliam's home on North Fifth Street

2

in Steubenville, Ohio. Officers found cocaine in a safe on an upper floor of the home. Henry was present at the time of the search but did not live at the home. Gilliam, the homeowner with a criminal record for drugs, was also charged. The trial evidence was insufficient to prove that Henry actually or constructively possessed the cocaine.

**Ground Two:** The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law, and entered a decision that was unreasonable in light of the trial record, by failing to find that Henry's rights to due process and a fair trial were violated by the prosecution's misconduct in vouching for the credibility of star witness Gilliam, expressing to the jury a personal belief that she was telling the truth.

**Supporting Facts**: Law enforcement found cocaine in a safe on an upper floor of Gilliam's home. Both Henry and Gilliam were charged with possession of the cocaine. Gilliam became the star witness against Henry, however, testifying that the drugs were not hers and that clothes found in the home and the safe were Henry's. Thus, Gilliam's credibility was the core issue for trial. With that background, the prosecutor improperly vouched for Gilliam during cross-examination of Henry and in closing argument, including telling the jury Gilliam "was telling you the truth."

**Ground Three**: The Ohio courts ruled contrary to, or unreasonably applied, clearly-established case law, and entered a decision that was unreasonable in light of the trial record, by failing to find that Henry's trial counsel was ineffective for failing to request a Franks hearing, based on available evidence, to demonstrate that Officer Thomas Ellis made materialy [sic] false/misleading statements in his affidavit and, thus, the search warrant must be invalidated and the evidence obtained as a result of the warrant suppressed.

**Supporting Facts:** Officer Ellis' affidavit filed in support of the request for a warrant to search of [sic] Gilliam's home contained materially false and/or misleading statements, including that Bernice Pearson assisted with controlled purchases from a named "E" at the home and that the controlled purchases occurred on July 28, 2015.

**Ground Four:** The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law, and entered a decision that was unreasonable in light of the trial record, by failing to find that Henry's trial counsel was ineffective for not investigating Gilliam's background to uncover her prior convictions

> and use those prior convictions at trial to discredit her, as she was the prosecution's star witness and the case came down to her credibility.
>
> **Supporting Facts**: Both Gilliam and Henry were charged with cocaine possession. Both Gilliam and Henry testified. Gilliam denied owning the drugs and claimed clothes in the home and the safe were Henry's, and thus her credibility was crucial. But defense counsel did not investigate her, determine that she had criminal [sic] past with drugs, and use that at trial.

(Petition, ECF No. 1). As noted above, Petitioner has withdrawn Ground One.

# Analysis

**Ground Two: Prosecutorial Misconduct by Vouching for Witness Credibility**

In his Second Ground for Relief, Henry claims he was denied due process and a fair trial when the prosecutor improperly vouched for the credibility of Angela Gilliam.

Respondent defends on the merits, asserting the Seventh District's resolution of this claim is entitled to deference under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA")).

Henry's Fourth Assignment of Error on direct appeal was "Defendant did not receive his constitutional right to a fair trial and due process because of cumulative error and prosecutorial misconduct." *Henry*, 2017-Ohio-7505, ¶ 31. The alleged prosecutorial misconduct was "bolstering of key witness by the prosecutor[.]" *Id*. at ¶ 33. The Seventh District decided this claim as follows:

{¶ 38} Appellant argues the prosecutor bolstered or vouched for the credibility of its witness, Angela Gilliam, during the cross-examination of Appellant and during the closing argument.

{¶ 39} Prosecutorial misconduct does not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Harp,* 4th Dist. No. 07CA848, 2008-Ohio-3703, at ¶ 20, citing *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L. Ed. 2d 78 (1982).

{¶ 40} "It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *State v. Smith,* 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 (1992), citing *State v. Thayer* (1931), 124 Ohio St. 1, 9 Ohio Law Abs. 734, 176 N.E. 656 (1931). However, "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L. Ed. 2d 431 (1974).

{¶ 41} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *Smith*, 14 Ohio St.3d at 13. We must view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." *State v. Treesh*, 90 Ohio St.3d 460, 466, 2001-Ohio-4, 739 N.E.2d 749 (2001). A prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L. Ed. 1314 (1935).

{¶ 42} The alleged improper statements occurred during the state's cross-examination of Appellant and during closing arguments. The cross-examination and closing arguments concerned Angela Gilliam's testimony. She testified Appellant was staying with her on and off from June 2015 through the search date of July 28, 2015. Tr. 190. She stated the lock box containing the drugs was his and the closet where the lock box was found was his. Tr. 190, 192-193. The male clothes and the Newport cigarettes found in that closet were Appellant's. Tr. 192-193. She also testified Appellant sent her letters

after he was charged. Tr. 193. In those letters he stated his lawyer told him the only way the charges would "stick" is if she said the male clothes in the closet were his and that he was living there. Tr. 194-195; State's Exhibit 62. He asked her to say he was not living there and nothing illegal found belonged to him. Tr. 195; State's Exhibit 63.

{¶ 43} During the cross-examination, the state questioned Appellant about the letters he sent to Angela Gilliam instructing her to tell the police Appellant was not living with her:

> Q. You and Angela get along?
>
> A. We're very close.
>
> Q. So, is she lying up here?
>
> A. She has to be, yes.
>
> Q. Okay. So, why do you keep telling her "All you got to say is I don't live there"? Why are you saying that?
>
> A. Say what? Excuse me?
>
> Q. In your letter -
>
> A. Uh-huh.
>
> Q. –"All you got to say," to Angela, "is I didn't live there."
>
> A. Right because I didn't live there and I knew that under the — the — the procedure that I received from Officer Hanlin, he will make you say things that you don't want to say. He will make you do things that you wouldn't do by threatening your livelihood and your freedom. So, I knew what they was going to do to her.
>
> Q. She — she didn't say that.
>
> A. Well.
>
> Q. She didn't say that. So, if she didn't say that it's either not true or she's lying.

A. Well, I was raised not to call anybody liars. That's very disrespectful. I would say she might have been mistaken but if you want me to give you -

Q. Mistaken about what? Mistaken about?

A. Mistaken about what was in her house and who — who — where that stuff — who that stuff belonged to.

Q. I mean, I showed her the picture. I asked her about this. She says that's you.

A. What would any woman say that has charges like this that, mind you, that she was charged with 70 days later, what would a woman say if they're charged — if they're trying to charge her with something and threatening her freedom, saying 14, 16 years, what would — what would — and — and they want you to say something, what would you do? She's going to say — she's going to say whoever they want you to say. Anybody would do that.

Tr. 244-245.

{¶ 44} During closing, the prosecutor discussed the evidence and disputed Appellant's statement that Angela Gilliam was mistaken when she testified the clothes and the safe where the drugs were found belong to Appellant:

The content of the letters that he wrote to Angela Gilliam that you will receive and you can review in total and what I want you to do is to review those letters and ask yourself whether those letters are consistent with his ignorance that he didn't know anything about these drugs, these guns.

You will find that he tells Angela Gilliam "This is what I want you to tell law enforcement, tell them that stuff is not mine." Well, I submit that that statement is more consistent with his knowledge than it is with his ignorance.

"Tell them you don't know whose stuff that is but it definitely wasn't yours." We know that. "Tell them that — don't tell them that the clothes there are mine." Those are statements of a Defendant that is trying to tell a person "help me out, tell them something that isn't so to help me."

> And then you have the testimony of Angela Gilliam. Contrary to what Defense Counsel said, she said she saw him with drugs in the past when he would take it out of his pocket.
>
> She said that the safe and clothes belong to Elvis Henry. She said that he smokes Newport cigarettes. A carton of Newport cigarettes is in a tote that she says has his clothes and his safe. She was neither lying nor mistaken. She was telling you the truth.
>
> She said that he stayed at 740 North Street from time to time from the end of May to July 28th. You have to look at the photographs, of all the drugs, the drug paraphernalia, the guns that were scattered throughout this house.

Tr. 279-280.

{¶ 45} The prosecutor's closing argument continues with a discussion about the drug paraphernalia, guns, cell phones, and text messages. Tr. 280-281. The prosecutor also discussed Appellant's defense contending law enforcement planted the drugs. Tr. 280-281.

{¶ 46} Considering the context in which the statements were made, the prosecutor did not commit misconduct. His questioning and closing pointed out the holes in Appellant's position that Angela Gilliam was mistaken when she claimed he was the owner of the clothes and safe. When read in context, the language used does not rise to a level of misconduct.

*Henry*, 2017-Ohio-7505.

The Sixth Circuit has stated the standard for prosecutorial misconduct claims as follows:

> The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted). To satisfy this standard, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006); *see also Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (noting that reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant") (internal citation omitted). If conduct is

> found to be improper, four factors are then considered to determine whether the conduct was flagrant and therefore warrants reversal: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

*Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008).

The first alleged instance of vouching occurred when "the prosecutor asserted that Gilliam 'decided to tell the truth.'" (Reply, ECF No. 14, PageID 1002). Those words were spoken as part of a question to Henry on cross-examination. Asking Henry about the content of letters he wrote to Gilliam attempting to structure her testimony, the prosecutor quotes Henry as writing "My lawyer said he will eat this case up as long as she stays solid and don't do no dumb-ass shit to help these dumb-asses out, flat out." The prosecutor then says "You were right but she decided to tell the truth and now you're turning on her." Understanding this to be a question, Henry responds "No, it's not true." (Trial Transcript, ECF No. 10-1, PageID 823).

This case at trial clearly turned on the competing testimonies of Henry and Gilliam. Henry's credibility was substantially undermined by the letters he wrote to Gilliam telling her what her testimony should be. The prosecutor's words quoted in the prior paragraph are not a vouching for Gilliam's testimony, but part of a confrontation of Henry with his own effort to persuade Gilliam what to say. Henry said Gilliam was either lying or mistaken.

The second alleged instance of vouching came in closing argument when the prosecutor said Gilliam was "neither lying nor mistaken, she was telling you the truth." (Trial Transcript, ECF No. 10-2, PageID 855). This also is not properly considered an instance of vouching. The prosecutor is arguing to the jury what the truth of the case is. In doing so, he could not avoid comparing the stories of Henry and Gilliam.

9

In the Magistrate Judge's opinion, then, the Seventh District Court of Appeals was not objectively unreasonable in finding that neither of these two instances of alleged vouching constituted prosecutorial misconduct. But even if the conduct was improper, Petitioner has not shown that it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Petitioner cites no Supreme Court case law clearly establishing that prosecutorial comments of the sort made here constitute misconduct. Petitioner relies on *Johnson v. Bell*, 525 F.3d 466 (6th Cir. 2008), a capital habeas case, in which the court criticized the prosecutor for injecting a personal interest into the case, identifying with the victim:

> In his closing rebuttal argument, Shriver told the jury:
>
>> I have a very personal interest in this case and I suppose that is why I am here today. Little Bob Bell, twelve years old, started out in the first grade at Burton School with my twelve year old daughter. They started, they have gone through school together. Burton School, Stokes School, would have gone to John Trotwood Moore together this year. It could have been my little girl that was in that store, a witness eliminated. It could have been you. It could have been your children. It could have been any one of us, if we decided that we wanted to buy something from Bob Bell, at nine fifty-eight on July 5, 1980, we would have been dead.
>
> Closing arguments that encourage juror identification with crime victims are improper. See *Hodge*, 426 F.3d at 384. Similarly, a prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears--rather than the evidence--to decide the case. See Gall v. Parker, 231 F.3d 265, 315 (6th Cir. 2000) (overruled on other grounds by Bowling v. Parker, 344 F.3d 487, 501 n.3 (6th Cir. 2003)). Here, the prosecutor's remarks were clearly calculated to trigger the jurors' emotions and fears. We therefore find the statement improper.

525 F.3d at 484. The court went on to find the comment was not flagrant and therefore not a basis

for granting the writ. The language quoted by Petitioner from *Johnson* is actually a quotation by that court from *Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005):

> We note that it is not necessary for the prosecutor actually to use the words "I believe," or some similar phrase, for a statement to constitute an improper comment on the credibility of witnesses. *See Hodge v. Hurley*, 426 F.3d 368, 379 n.20 (6th Cir. 2005). However, we find that Gray neither directly nor indirectly vouched for Davis's credibility through the statements at issue. *See Francis*, 170 F.3d at 550.

525 F.3d 484 at n.16. In *Hodge*, the prosecutor commented directly on the credibility of many witnesses and blatantly misrepresented the evidence. 426 F.3d at 380.

Petitioner also relies on *Taylor v. United States*, 985 F.2d 844 (6th Cir. 1993). *Taylor* was an appeal from denial of a § 2255 motion, rather than from denial of habeas on a state conviction, so a different standard of review applied.[1] Taylor was asserting ineffective assistance of trial counsel for his lawyer's failure to attack vigorously enough an FBI agent's vouching for a witness's credibility, and the court commented that improper vouching is a sin to be laid at the feet of prosecutors, not FBI agents. Thus, the court's comment that "[i]mproper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility," is entirely dictum because there was no prosecutor's comment at issue in the case.

The Seventh District's resolution of the prosecutorial misconduct claim was not an objectively unreasonable application of Supreme Court precedent to this case. Ground Two should therefore be dismissed.

---

[1] *Taylor* was also decided before AEDPA became effective in 1996 and enacted the deference standard in 28 U.S.C. § 2254(d)(1) and (2).

**Ground Three: Ineffective Assistance of Trial Counsel in Connection with the *Franks* Hearing**

In his Third Ground for Relief, Henry claims he received ineffective assistance of trial counsel when his attorney did not seek a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) with respect to the search warrant affidavit. While the Petition is pleaded this way, in the Brief in Support, Petitioner avers that a *Franks* hearing was in fact held on February 4, 2016 (ECF No. 6, PageID 63). In the Brief, he particularizes his claim: "In sum, there were strong reasons for using the digital recording of a controlled purchase and calling Ms. [Bernice] Pearson to challenge the veracity of Officer Ellis's affidavit." *Id.* at PageID 65.

Respondent defends this claim on the merits, asserting the Seventh District's decision on this issue is entitled to deference under AEDPA (Return, ECF No. 11, PageID 990, citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). In his Reply Brief, Henry asserts that

> Ellis' affidavit described how it was possible for the police to conduct a controlled buy from "E" and claimed that it happened twice before seeking the search warrant. These statements were essential facts supporting probable cause. The problem is that the record, as supplemented with evidence Henry filed with his pro se post-conviction petition, shows that neither essential statement was accurate.

(ECF No. 14, PageID 1010.)

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, "[t]o establish ineffective assistance of counsel, 'a defendant must show both deficient performance by counsel and prejudice.'" *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), quoting *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id*. at 694. .

In his *pro se* petition for post-conviction relief, Henry claimed Bernice Pearson was subpoenaed by the State to testify at his trial (Petition, State Court Record, ECF No. 9, PageID 235). When she appeared, she avers she told a representative of the State that "she never purchased

13

any drugs from Elvis Henry." *Id.* Her interlocutor then excused her from testifying because "they had enough evidence to convict petitioner." *Id.* Henry's memorandum tracks Ms. Pearson's affidavit, made December 5, 2016, except that she says she "can't remember exactly who I spoke to when I arrived at the courthouse" and that Elvis Henry is "like a nephew to me." *Id.* at PageID 254-55.

Henry's post-conviction petition focused on his alibi claim and assertion that his counsel was ineffective in failing to pursue it. The trial judge denied the petition, noting that

> The Search Warrant was based upon two controlled buys from Defendant at a time when he now claims he was elsewhere. He blames his attorney for not asserting his alibi and cites Affidavits from various family members and long-time drug abusers to support his claim.
>
> Defendant's problem is that the controlled buys were witnessed by Police at the time they occurred. While Police relied upon local drug abusers to set up the deal it was their own observations of the controlled buys themselves that lead [sic] to the search warrant. It is not clear if the Officers saw the actual hand to hand but they definitely saw Defendant who was not elsewhere.

(Order, State Court Record, ECF No. 9, PageID 311). The judge also notes that the confidential informant had been killed, the apparent victim of homicide, so that Henry's delay in asserting his claim had prejudiced the State. *Id.* at PageID 312[2]. He also noted that "Henry was in possession of the prerecorded buy money at the time of arrest." *Id.*

On appeal, Henry, proceeding *pro se*, again claimed ineffective assistance of trial counsel regarding his alibi witness, Amber West, and failure to call Bernice Pearson who would allegedly have testified at trial that she never purchased drugs from Henry. The Seventh District Court of Appeals held the trial court judge had acted properly under Ohio law in finding the affidavits not

---

[2] The facts on which Henry relied were known to him at the time of trial in March 2016, but his post-conviction petition was not filed until May 2017.

14

to be credible and denying the post-conviction petition on that basis. *Henry*, 2018-Ohio-787, at ¶¶ 10-11, citing *State v. Calhoun*, 86 Ohio St. 3d 279, 284 (1999)). The truth of Pearson's Affidavit is necessary to make Detective Ellis's statements in the search warrant affidavit false and excludable from the probable cause determination. But the state courts' conclusion that Pearson's Affidavit was not credible is not an unreasonable determination of the facts based on the state court record. Had Pearson appeared at the suppression hearing and testified as she proposed to do in her Affidavit, the confidential informant would have been available to contradict her testimony, but of course she was dead by the time the post-conviction petition was filed. The state courts were not required to accept the truth of Pearson's proposed testimony in determining, in a proceeding brought fourteen months after trial, that Ellis's affidavit should have been excised. Because the reasons to doubt Pearson's credibility would have been obvious to a person in the position of Henry's trial attorney, it was not ineffective assistance of trial counsel to fail to call her. The decision whether to call a particular witness is peculiarly a matter of tactics and "counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, "strategic choices by defense counsel are 'virtually unchallengeable.'" *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), quoting *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

The state courts' decision of Ground Three was not an objectively unreasonable application of *Strickland* and is entitled to deference under 28 U.S.C. § 2254(d). Ground Three should therefore be dismissed.

**Ground Four: Ineffective Assistance of Trial Counsel with Respect to Amber Gilliam**

15

In his Fourth Ground for Relief, Henry alleges his trial attorney provided ineffective assistance of trial counsel when he failed to obtain and use Amber Gilliam's prior conviction for petty theft to impeach her at trial, given the importance of her testimony.

In his initial Brief, Henry argues at length the obligation of defense counsel to investigate the case (ECF No. 6, PageID 66-70). At the very end of that argument he states:

> Had trial counsel investigated, he would have uncovered that in March 2015, Gilliam was sentenced to one year of probation for the theft conviction. The jury had heard that Henry had a criminal past. Henry submits that, in this circumstantial evidence case in which the constructive possession of cocaine came down to the credibility of the state's star witness, a reasonable probability exists that the outcome would have been different if the jury would have learned of Gilliam's criminal past. And yet because trial counsel did not investigate Gilliam, he was unaware of this strong impeaching evidence.

*Id.* at PageID 71.

Respondent notes that Henry's claim, both on direct appeal and in post-conviction, was that the dismissal of the indictment against Gilliam and failure to revoke her probation for the petty theft proved she had some sort of off-the-record deal with the State (Return, ECF No. 11, PageID 994-96). In his Reply Brief, Henry disclaims any continued reliance on that theory (ECF No. 14, PageID 1012). Rather, he says, his claim is failure to impeach with the prior conviction, pure and simple. *Id.*

On appeal from denial of the post-conviction petition, the Seventh District understood that Henry's claim made there was about an off-record deal with the State:

> Had trial counsel investigated, he would have uncovered that in March 2015, Gilliam was sentenced to one year of probation for the theft conviction. The jury had heard that Henry had a criminal past. Henry submits that, in this circumstantial evidence case in which the constructive possession of cocaine came down to the credibility of the state's star witness, a reasonable probability exists that the outcome would have been different if the jury would have learned

> of Gilliam's criminal past. And yet because trial counsel did not investigate Gilliam, he was unaware of this strong impeaching evidence.

*Henry*, 2018-Ohio-787, at ¶ 33. The appeals court found that the addition of documents showing the petty theft conviction did not add substantially to the claim made on direct appeal that there was an off-record deal. *Id.* at ¶ 36. On direct appeal Henry had argued this claim not as a matter of ineffective assistance of trial counsel, but as a claim of prosecutorial misconduct; his post-conviction petition merely repackaged this as a claim of ineffective assistance of trial counsel.

In his post-conviction petition, Henry does not make the same claim made in his habeas corpus petition, to wit, that her petty theft conviction could have been used to impeach Gilliam. Instead, he notes that his private investigator found a prior minor misdemeanor marijuana conviction and "charges" of robbery and theft "out of Pennsylvania." (Post-Conviction Petition, State Court Record, ECF No. 9, PageID 239). Moreover, trial counsel would not have needed to investigate Gilliam to learn of the prior conviction, because the State would have been obliged to disclose that conviction in discovery. Ohio R.Crim.P. 16(B)(2).

In rejecting this claim on appeal, the Seventh District held:

> {¶ 33} Municipal court judgments were also attached to the petition for postconviction relief. These filings also fail to evince substantive rounds for relief. The municipal court filings regarding Angela Gilliam's criminal record are used to support Appellant's argument that Angela Gilliam had an agreement with the prosecution to testify against Appellant and that agreement was not disclosed to the jury or to Appellant. This argument was presented in the direct appeal in the fourth assignment of error; Appellant claimed he did not get a fair trial because of cumulative error and prosecutorial misconduct. *Henry*, 2017-Ohio-7505 at ¶ 32-33, 56-59. In the direct appeal, Appellant argued Gilliam was indicted for the same crimes he was and since her indictment was dismissed prior to Appellant's sentencing, there must have been an agreement with the state for her to testify against him in exchange for the dismissal of her indictment.

17

> {¶ 34} Appellant now expands upon that argument. He attached judgment entries indicating Gilliam was on probation for a misdemeanor theft offense at the time she was indicted. He contends her probation was not violated upon her indictment and the probation was completely erased from her record. He asserts this is further evidence she had an agreement with the state to testify against him.
>
> {¶ 35} The judgments he attached indicate Gilliam was sentenced to one year of probation for theft on March 3, 2015. Appellant's trial occurred exactly one year later. Thus, the probation would have been completed. Nothing in the attached judgments indicates her probation was erased. His attachments do not indicate she received a probation violation for being indicted. However, it is not unusual for the probation violation to be stayed until the case from which the indictment arose is resolved. Furthermore, filing a probation violation is a discretionary matter. Therefore, the information provided by Appellant in the postconviction petition does not indicate there was an agreement between the state and Gilliam. The argument presented in the direct appeal was the strongest position for asserting there was an agreement. The argument, however, was determined to lack merit. [*Henry*, 2017-Ohio-7505, at ¶ 59.

*Henry*, 2018-Ohio-787. Thus, the court of appeals addresses the claim Henry actually made in post-conviction and not the claim that he has morphed the post-conviction claim into. Nonetheless, it did decide his ineffective assistance of trial counsel claim on the merits and rejected it. This Court can grant habeas relief only if that decision was an unreasonable application of *Strickland*.

Because trial counsel would have known of the petty theft conviction from discovery, the question is whether his failure to use it was deficient performance. As the court of appeals noted, Gilliam had apparently successfully completed probation on the petty offense conviction by the time of Henry's trial. Cross-examining her about it would have given the State an opportunity to bolster her credibility by claiming successful rehabilitation on probation. Although the prior conviction could have been introduced, counsel may well have thought a petty theft conviction on which the court granted probation would not in fact be very impeaching. Henry has not, therefore, proved it was deficient performance to fail to use the prior conviction or resulting prejudice. The

18

State had shown the jury Henry's possession of the marked currency and his letters to Gilliam from jail telling her what to say.

Henry has not shown that the Seventh District's decision on this portion of the post-conviction appeal was an objectively unreasonable application of *Strickland*. Ground Four should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

November 8, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on

appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).